IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| MICHAEL CLAUDE GUBSER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | 1:17CV992 |
|  | ) |  |
| NANCY A. BERRYHILL, | ) |  |
| Acting Commissioner of Social | ) |  |
| Security, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Michael Claude Gubser, seeks review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

**I.     PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on September 9, 2013 alleging a disability onset date of December 15, 2012. (Tr. 79, 92, 187-195.) His application was denied initially and again upon reconsideration. (*Id.* at 68-78, 80-91.) On May 26, 2016, a hearing was held before an Administrative Law Judge ("ALJ") at which Plaintiff and his attorney were present. (*Id.* at 44-67.) Thereafter, a supplemental hearing at which Plaintiff, his attorney, and a vocational expert ("VE") were present took place on September 6, 2016. (*Id.* at 29-41.) On

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 8.)

October 4, 2016, the ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 11-22.) On September 7, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "[I]n reviewing for substantial evidence, [the Court] do[es] not re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] Here, the ALJ first determined that

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the

2

Plaintiff had not engaged in substantial gainful activity since the application date of September 9, 2013. (Tr. 13.) The ALJ next found that Plaintiff suffered from a single severe impairment: mild mental retardation. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one listed in Appendix 1. (*Id.* at 13-17.)

Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (*Id.* at 17-20.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC

> to perform a full range of work at all exertion levels but with the following nonexertional limitations: he can have no more than frequent interaction with coworkers and supervisors, and occasional interaction with the public; he retains the capacity to perform simple, routine, repetitive tasks; he cannot perform production rate or pace work.

(*Id.* at 17-18.) At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 20.) Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform such as electronics worker, cleaner/polisher, and laundry worker. (*Id.* at 21.) Consequently, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the decision date. (*Id.* at 22.)

---

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

## IV. ISSUES AND ANALYSIS

Plaintiff sole assignment of error is that the ALJ erred by failing to resolve a conflict between the RFC and the VE's testimony. (Docket Entry 11 at 2-6.) As background, Consultative examiner John F. Warren, III, Ph.D. examined Plaintiff on December 3, 2013. (Tr. 446.) In his "summarizing statements," Dr. Warren opined that Plaintiff would have "[d]ifficulty maintaining a job due to being slow in his work habits and difficulty following directives." (*Id.* at 449.) He further opined that Plaintiff "has difficulty comprehending instructions and will likely need instructions repeated and explained in a supportive environment" and "may benefit from seeking assistance from a vocational workshop which could provide supportive supervision, help develop work skills, and give him something productive to do with his day." (*Id.*) Regarding Dr. Warren's report, the ALJ found as follows:

> To the extent this can be considered opinion evidence, Dr. Warren's statements have been given significant weight and the undersigned has accounted for them in formulating the residual functional capacity assessment. For example, in light of the claimant's memory problems, issues following directions, and "slow work habits," the undersigned has limited him to jobs requiring only simple, routine, and repetitive tasks and no production rate or pace work.

(Tr. 20.)

At Plaintiff's September 6, 2016 hearing, the ALJ asked the VE if there were jobs available in the national economy for an individual with Plaintiff's RFC plus additional environmental limitations. (Tr. 34-35.) The VE testified that the hypothetical individual could work as an electronics worker, cleaner and polisher, or laundry worker. (*Id.*)

4

Plaintiff's counsel then questioned the VE about Dr. Warren's comments:

> Q: And I would also like to ask you about supervision. We have some evidence in this case from a psychologist indicating that [Plaintiff] may have a need for closer than normal supervision in a work environment because of difficulty with tasks such as understanding instructions. And I guess the easiest way to ask you the question is just to read what the psychologist put in the report. The psychologists stated that this client has difficulty comprehending instructions and will likely need instructions repeated and explained in a supportive environment, and he may benefit from seeking assistance from a vocational workshop which could provide supportive supervision, help develop his work skills, and give him something productive to do with his day. So, it sounds like, from what the psychologist said, we're talking about closer than normal supervision. If you had a person that had the difficulties that are described by the psychologist, would that have any negative impact on the ability to perform the types of unskilled work positions that you've identified?
>
> A: Given that statement, I believe the term vocational workshop is also referred to as sheltered employment, which would not be considered competitive employment.
>
> Q: So if the individual were limited to that type of work environment, would be -- would he be unable to perform the types of unskilled positions that you have identified?
>
> A: In the competitive workplace, yes.

(Tr. 36-37.)

Plaintiff now contends that the significant weight the ALJ gave Dr. Warren's opinion creates a conflict between the RFC, which did not include a limitation to a supportive environment or vocational workshop, and the VE's testimony that such limitations would preclude employment. (Docket Entry 11 at 2-6.) Plaintiff continues, "[t]he ALJ appears to equate a vocational workshop providing repetition and explanation of instructions in a

5

supportive environment with a work environment requiring only simple, routine, and repetitive tasks and no production rate or pace work. But this is contradicted by the testimony of the VE at hearing." (*Id.* at 5.)

The Commissioner counters that there is no conflict between the ALJ's RFC determination and the VE's testimony. Rather, the Commissioner argues,

> The essence of Plaintiff's argument is that because the ALJ accorded "significant weight" to the December 3, 2013 Psychological Evaluation of John F. Warren, III, Ph.D., it was inconsistent for the ALJ to not incorporate all of Dr. Warren's findings in his residual functional capacity assessment and hypothetical question to the VE. ... However, the ALJ giving significant weight to Dr. Warren's overall assessment did not bind the ALJ to adopt all of Dr. Warren's findings. ... The ALJ was not required to wholesale adopt Dr. Warren's findings—rather, he only was required to consider Dr. Warren's findings and explain how he factored them into his overall decision. That is exactly what the ALJ did.

(Docket Entry 13 at 4-6.) For the reasons that follow, the Court both agrees and disagrees with the Commissioner and finds that remand is the proper course.

First, the Court agrees that Plaintiff's argument appears to focus on a conflict between Dr. Warren's opinion—which the ALJ accorded significant weight—and the RFC, which does reflect all of the limitations Dr. Warren proposed. (*Id.* at 4.) Second, the Court agrees with the Commissioner that it is "clear that an ALJ is not required to incorporate into a residual functional capacity assessment every finding made by a medical source, simply because the ALJ gave the source's opinion as a whole significant weight." (*Id.* at 5 (citing *Bacnik v. Colvin*, No. 1:12-CV-801, 2014 WL 3547387, at *4, n. 7 (M.D.N.C. July 17, 2014) (unpublished) (holding that "An ALJ is not required to adopt every opinion in a non-examining medical

6

expert's report, even when according the report great weight overall") (additional citations omitted). However, contrary to the Commissioner's assertion, the ALJ did not adequately explain his reasoning and partial adoption of Dr. Warren's opinion. The Court therefore ultimately agrees with Plaintiff that remand is warranted because the regulations require more than mere omission. *See Ingram v. Berryhill*, No. 1:17CV135, 2017 WL 6501927, at *7 (M.D.N.C. Dec. 19, 2017) (unpublished) ("Although an ALJ need not, by virtue of crediting a medical source's opinions, incorporate all of those opinions verbatim into the RFC, the ALJ's decision must still make clear to the reviewing court which opinions the ALJ adopted, which opinions or she rejected, and the reasons therefor.") (citing Social Security Ruling 96–8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." (emphasis added))), *report and recommendation adopted* slip op., (M.D.N.C. Jan. 04, 2018) (unpublished).

Here, the ALJ purported to account for Plaintiff's "memory problems, issues following directions, and 'slow work habits'" by limiting him to "jobs requiring only simple, routine, repetitive tasks" ("SRRTs") and "no production rate or pace work." (Tr. 20.) But no physician opined that such limitations were sufficient to account for Plaintiff's impairments. Rather, Dr. Warren suggested Plaintiff would "likely need instructions repeated and explained in a *supportive environment*" (*id.* at 20, 449 (emphasis added)) and "might benefit from seeking assistance from vocational workshop" (*id.*). The ALJ gave significant weight to these

statements but, without explanation, omitted any reference to a supportive environment or vocational workshop. (*Id.*)

Similarly, although not noted in Plaintiff's brief, state agency physicians Brian Grover, Psy.D. and Darolyn Hilts, Ph.D. determined that Plaintiff would "have difficulty" understanding and remembering in a work setting, but "should be able to understand and follow at least very basic instructions *with guidance.*" (Tr. 74, 86 (emphasis added).) They also found Plaintiff has moderate adaptive limitations but concluded Plaintiff "appears capable of responding to routine change in a *stable, low pressure setting.*" (Tr. 75, 87-88 (emphasis added).) The ALJ remarked that he gave the state agency physicians' opinions significant weight and "largely incorporated these opinions into the residual functional capacity assessment." (*Id.* at 20, 73-75, 86-88.) However, as before and without explanation, the ALJ omitted any reference to additional "guidance" or a "stable, low pressure" work environment beyond the limitation to "no production rate or pace work." (*Id.*)

In both instances, the ALJ omitted limitations contained in opinions to which he gave significant weight, and did so without explanation. Thus, the Court cannot tell whether these limitations were omitted intentionally or accidentally. If intentionally omitted as accounted for, the ALJ failed to explain how the less restrictive limitation to SRRTs and non-pace or production work is adequate to account for Plaintiff's difficulties. Neither can the Court determine whether a limitation to a "stable, low pressure" workplace or some limitation to account for Plaintiff's need for additional "guidance" or "support[ ]" would preclude competitive employment, and there is evidence that a restriction to "sheltered employment"

8

would certainly do so. The Court therefore cannot tell whether substantial evidence supports either the RFC or the ALJ's final determination. Thus, the undersigned concludes that even if these omissions do not rise to the level of harmful error, and they almost certainly do, [3] the ALJ's lack of explanation frustrates judicial review.

None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. To the extent Plaintiff raises any other issues in his motion, the Court declines consideration of any such issues at this time. *Hancock v. Barnhart*, 206 F.Supp.2d 757, 763-764 (W.D. Va. 2002) (on remand, the prior decision is of no preclusive effect, as it is vacated and the new hearing is conducted).

---

[3] *See e.g., See Ingram*, 2017 WL 6501927, at *4-6 (holding that the ALJ's failure to explain the conflict between the RFC and the opinions of the state agency physician and consultative examiner was error warranting remand); *Trexler v. Colvin*, No. 1:14CV1085, 2016 WL 715758, at *3-4 (M.D.N.C. Feb. 22, 2016) (unpublished), *report and recommendation adopted* slip op., (M.D.N.C. Mar. 17, 2016) (unpublished) (finding that the ALJ's failure to include state agency consultant's limitation to low stress or non-production environment without explanation was error that warranted remand pursuant to *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *6 (M.D.N.C. Aug. 14, 2013) (unpublished) (Webster, M.J.) ("In attributing substantial weight to the findings of State agency medical consultants, the ALJ may have only intended to adopt the exertional limitations (i.e., light work) set forth by the non-examining State agency physicians, because that is the only limitation the ALJ included in Plaintiff's RFC. If so, the ALJ erred by ignoring — that is, by failing to accept, reject, or address — the findings of Drs. Roque and Perkins, the non-examining state agency experts who considered Plaintiff's [mental] limitations. Alternatively, one might read the ALJ's decision as attributing substantial weight to the opinions of all non-examining State agency experts, including Drs. Roque and Perkins. Under this interpretation, the ALJ still erred, and in fact erred more egregiously, because he attributed substantial weight to the findings of Drs. Roque and Perkins, but then failed to incorporate those findings in Plaintiff's RFC. Thus, because the ALJ erred in either event, the undersigned need not resolve any ambiguity ...."), *report and recommendation adopted*, slip op. (M.D.N.C. Sept. 10, 2013) (Osteen, Jr., J.).

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that Plaintiff has established an error warranting remand. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's motion for summary judgment (Docket Entry 10) should be **GRANTED** and Defendant's motion for judgment on the pleadings (Docket Entry 12) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

August 24, 2018
Durham, North Carolina